CLEGG v. BRANNAN et al.  (No. 5602.)

(Court of Civil Appeals of Texas. Austin. Nov. 22, 1916. Rehearing Denied Dec. 23, 1916.)

1. SPECIFIC PERFORMANCE ⬤�270 32(3) — CONTRACT TO CONVEY—MUTUALITY OF REMEDY.

A contract whereby defendant bargained and sold to plaintiff a certain ranch at a certain price, free and clear, for a recited consideration of $1, and the plaintiff's conveyance of certain described properties to the defendant, not signed by the plaintiff, was a unilateral contract, lacking in mutuality; and, since it bound defendant alone to convey, and since he could not have enforced specific performance against plaintiff, plaintiff could not enforce specific performance against him.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 92–98; Dec. Dig. ⬤�270 32(3).]

2. FRAUDS, STATUTE OF ⬤�270 69—ORAL CONTRACT—SALE OF LAND.

Such contract, not having been signed by the plaintiff, was in contravention of the statute of frauds (Vernon's Sayles' Ann. Civ. St. 1914, art. 3965), and was not binding upon him, without allegations showing him to be entitled to specific performance by reason of possession, part payment, etc.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 111; Dec. Dig. ⬤�270 69.]

3. SPECIFIC PERFORMANCE ⬤�270 8 — REMEDY — DISCRETION OF COURT.

The granting of specific performance is not a matter of absolute right, but is within the discretion of the court, and it may be granted or rejected according to the circumstances of each particular case.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 17, 18; Dec. Dig. ⬤�270 8.]

4. SPECIFIC PERFORMANCE ⬤�270 44—ORAL CONTRACT TO CONVEY—POSSESSIONS.

Specific performance of an oral contract to convey land will not be enforced, in the absence of possession or permanent improvements made thereon, though the purchase money has been paid, as the payment of the purchase money, unaccompanied by possession, will not support an oral sale of land.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 126; Dec. Dig. ⬤�270 44.]

5. SPECIFIC PERFORMANCE ⬤�270 43—ORAL CONTRACT—PART PERFORMANCE.

That a party to an oral contract to convey land has conveyed to. the other party will not, standing alone, be accepted as a part performance, since such act is merely equivalent to a payment by him, not entitling him to specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 125, 130, 131, 134–139; Dec. Dig. ⬤�270 43.]

6. FRAUDS, STATUTE OF ⬤�270 110(1), 158(3) — CONTRACT FOR SALE OF LAND—MEMORANDUM —DISCRETION.

A memorandum of agreement for the exchange of lands, which did not describe a tract of land or give field notes from which it could be identified, parol evidence being inadmissible to aid such description, was insufficient within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§. 226–231, 375; Dec. Dig. ⬤�270 110(1), 158(3).]

Appeal from District Court, Schleicher County; J. W. Timmins, Judge.

Suit by T. J. Clegg against J. H. Brannan and others. Demurrer to petition sustained, and judgment for defendants, and plaintiff appeals. Affirmed.

D. T. Bomar, of Ft. Worth, and Wright & Harris, of San Angelo, for appellant. W. B. Silliman, of Eldorado, and Cornell & Wardlaw, of Sonora, for appellees.

RICE, J. On the 15th day of May, 1914, appellee Brannan executed and delivered to

appellant Clegg the following instrument of writing:

"The State of Texas, County of Tom Green.

"Know all men by these presents: That I, J. H. Brannan of Schleicher county, Texas, have this day bargained and sold to T. J. Clegg of Tom Green county, Texas, about 7,391 acres of land lying and being situated in Schleicher county, Texas, and known as the Fury ranch, and including other lands owned by me for the consideration of $8 per acre, free and clear of any and all incumbrances whatsoever, on the following terms and conditions, to wit: $1.00 cash in hand paid, the receipt of which is hereby acknowledged, and a good title and conveyance in law to the following described property and real estate, situated in and near Carlsbad, Tom Green county, Texas: Being all of blocks Nos. 281, 282 and 283, in Mason Perry Co.'s subdivision No. 1 of the Collyns ranch, a total of 329.67 acres at $75 per acre, a total of $24,725.25; the waterworks system in Carlsbad, Texas, at a price of $12,106.90; the waterworks system to constitute the standpipe, well, engine, mains, tools, and franchise for both water and electric lights in Carlsbad, Texas, and a perpetual right for pipe line running through block No. 288, in Mason Perry Co.'s subdivision No. 1 of the Collyns ranch to the North Concho river, and with the perpetual right to use water at the junction of pipe with the said river for supplying the town of Carlsbad, Texas, with water, it being understood, however, that the pipe is to be sunk to a depth in the ground that it will not interfere with plows or other work, and that no conveyance to the land shall pass on account of such perpetual right as expressed; also there goes with the waterworks system the whole block of lots on which the standpipe is located; also one-fourth acre of land surrounding the well, with right of ingress and egress, the gin now located in the northeast corner of block No. 288, in Mason Perry Co.'s subdivision No. 1 of the Collyns ranch at $5,590.61, together with the two acres of ground out of the northeast corner of said land; the Plaza block in the town of Carlsbad, Texas, on which is located the bathhouse, pavilion, the Bethseda mineral well; lots Nos. 15, 16, 17, and 18 in block No. 29, of the town of Carlsbad, Texas, on which is located the Ben Hur mineral well; also what is known as the Bethlehem mineral well, with two lots therewith (it being understood that if either of the lots have the old schoolhouse located thereon, T. J. Clegg shall have the right to remove said house) the bathhouse at a price of $7,081.17, the pavilion and mineral wells at a price of $2,927.08.

"On account of repairs necessary to be done the waterworks system T. J. Clegg is to deed to the said J. H. Brannan five (5) vacant lots in the town of Carlsbad, Texas. On account of repairs necessary to be done the gin, T. J. Clegg is to deed to the said J. H. Brannan five (5) vacant lots in the town of Carlsbad, Texas; on account of differences in valuation, T. J. Clegg is to deed to the said J. H. Brannan seven (7) vacant lots in the town of Carlsbad, Texas, all of said lots are to be selected by the said Brannan and are those now owned by the said T. J. Clegg.

"It is understood T. J. Clegg assumes in this transaction the sum of $11,000.00 due by the said J. H. Brannan to H. P. Drought & Co. and also assumes $4,486.00 due the state of Texas, with the understanding that the said J. H. Brannan assumes and obligates himself in an indebtedness against the property to be conveyed to him by the said T. J. Clegg of $9,400.00 the same to be secured by a vendor's lien, or mortgage or both, and reserved in the conveyances. The idea being the valuations should even up as stated.

"Interest on all amounts assumed by both J. H. Brannan and T. J. Clegg to be calculated to date of conveyances. It is hereby agreed and understood by and between both the said J. H. Brannan and T. J. Clegg that good abstracts, showing good titles in law, will be prepared and delivered to each other within thirty days from the date hereof, or sooner, if possible.

"In testimony whereof, witness the signature of the maker hereof, this the 15th day of May, A. D. 1914.      [Signed] J. H. Brannan."

Which was duly acknowledged.

This suit was brought by appellant, Clegg, against appellee Brannan, to enforce specific performance of the above instrument, and against appellees O. C. Roberts and the First National Bank of Eldorado, Tex., whom it was alleged were claiming some interest in the land sold by appellee to appellant, arising subsequent to the making of the instrument above set out. Appellant further alleged, as appears from his brief, that with the execution and delivery of said writing he paid to appellee $1 in cash; that he agreed to pay, and did pay, in the assumption of an indebtedness due from appellee to H. P. Drought & Co., $11,000; that he agreed to pay, and did pay, by the assumption of an indebtedness due from appellee to the state of Texas on some of the lands, $4,486; that he agreed to pay, and did pay, by the conveyance to appellee of blocks 281, 282, and 283 in Mason Perry Company's subdivision No. 1 of Collyns ranch, in Tom Green county, Tex., containing 329.67 acres, the sum of $24,725.25; that he agreed to pay, and did pay, to appellee, by the conveyance of the waterworks system in Carlsbad, Tex., which included the standpipe, well, engine, mains, tools, franchises for both water and electric light and perpetual right for pipe line through block 288 in Mason Perry Company's subdivision No. 1 to the North Concho river, together with perpetual right to use water out of said river, etc., the sum of $12,106.90; that he agreed to pay, and did pay, by the conveyance of a gin located on the northeast corner of block 288, together with two acres of ground, $5,590.61; that he agreed to pay, and did pay, by the conveyance to him of the Plaza block in Carlsbad, Tex., upon which is situated the bathhouse, pavilion, and the Bethseda mineral well, and lots Nos. 15, 16, 17, and 18 in block No. 29 of the town of Carlsbad, Tex., upon which is situated the Ben Hur mineral well, and lots 11 and 12 in block 54 in said town, on which is situated the Bethlehem mineral well, $10,108.25. And further alleged that by the delivery of said instrument of writing by appellee to him, it was intended that appellant should, and that he did, assume, in the acceptance of same, to do and perform all of the things therein stipulated to be done and performed by the terms of said instrument, including the assumption of the incumbrances due H. P. Drought & Co. and the state of Texas; that he paid appellee Brannan the $1 therein recited; and that both appellant and appellee acted upon and treated said instrument of writing as binding

both parties thereto to do all of the things therein provided to be done.

[1, 3] Appellee addressed, and the court sustained, the following exception to appellant's petition, to wit: Defendant specially excepts to so much of said paragraph 1 as purports to set out the above instrument in writing, and says that the same is wholly insufficient, because upon its face it is, if anything, in law a contract for the exchange of lands, a contract by defendant Brannan to convey to plaintiff lands in exchange for lands to be conveyed by plaintiff to him; and said contract is unilateral and lacking in mutuality, and particularly lacking in mutuality with reference to remedies, since plaintiff did not sign or execute said contract, and since it is a contract required by the statute of frauds to be in writing, and was and is unenforceable as against plaintiff, Clegg.

Appellant declining to amend his petition, judgment was entered in favor of appellees, from which appellant has prosecuted this appeal, urging that the court erred in sustaining said demurrer.

It will be observed that appellant, Clegg, did not sign the contract sued upon. The same, in our opinion, was a unilateral contract, lacking in mutuality, since it bound appellee alone to convey, and he could not, in our judgment, have enforced specific performance of it against appellant. It is true that it is alleged that appellant accepted the contract and executed the conveyances called for thereby. This transaction, however, was in effect only an agreement to exchange lands, and, not having been signed by appellant, was in contravention of our statute of frauds (article 3965, Vernon's Sayles' Rev. Civ. Stats.), and was not binding upon him, in the absence of allegations showing that he was entitled to specific performance, such as having gone into possession, paying part of the purchase money, or making valuable improvements thereon, because the granting of specific performance is not a matter of absolute right, but is within the discretion of the court, and may be granted or rejected according to the circumstances of each particular case. See 36 Cyc. 548D.

[4] Specific performance of an oral contract to convey land will not be enforced, in the absence of possession or permanent improvements made thereon, though the purchase money has been paid. See McCarty v. May, 74 S. W. 804. The payment of purchase money, unaccompanied by possession, will not support a parol sale of land. Dixon v. McNeese, 152 S. W. 675. In Brown on the Statute of Frauds, § 76, it is said:

"It is undoubtedly the settled law of this country, as of England, that the conveyance of lands by a verbal exchange or bartering merely is invalid by virtue of that statute [meaning the statute of frauds]."

See, also, same author, section 271.

[5] The fact that plaintiff has conveyed to defendant should not, standing alone, be accepted as part performance, since that act is merely equivalent to a payment by him. 36 Cyc. 688, 5, and authorities cited in note 37 thereunder. For other authorities bearing upon this question, see Wardell v. Williams, 62 Mich. 50, 28 N. W. 796, 4 Am. St. Rep. 814. See, also, Wright v. Berrow, 13 Tex. Civ. App. 146, 35 S. W. 190, where it is held, as shown by the syllabus that under a parol contract for the exchange of lands, the mere fact that one of the parties has deeded to the other the land to be conveyed by him is not such a part performance as entitles the former to specific performance of the contract.

[6] In addition to the above it will be seen that the contract declared on is insufficient, in that it fails to describe the one-fourth acre of land mentioned therein surrounding the well; as no field notes are given, it would be impossible to indentify same. It has been held that a memorandum relied on must contain a description of the land intended to be conveyed, and parol evidence is inadmissible to aid such description. See Brown on the Statute of Frauds, §§ 371, 385; Jones v. Carver, 59 Tex. 293.

Believing, for the reasons stated, that the court did not err in sustaining the demurrer, its judgment is affirmed.

Affirmed.