## BURNETT et al. v. MAR–TEX REALIZATION CORP.

No. 12382.

Court of Civil Appeals of Texas.
San Antonio.

June 11, 1952.

Rehearing Denied July 16, 1952.

Graves, Dougherty & Greenhill, Austin, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellant.

Lewright, Dyer, Sorrell & Reoford, Corpus Christi, Robertson, Jackson, Payne, Lancaster & Walker, Dallas, for appellee.

W. O. MURRAY, Chief Justice.

This is a suit by Mar-Tex Realization Corporation (hereinafter called Mar-Tex), against Coy Burnett to compel delivery of an oil and gas lease containing a drilling contract covering a tract of about 130 acres of land, known as Shamrock Island, or Shamrock Point, in Nueces County. While the litigation was pending Burnett drilled oil wells upon the land. Burnett defended upon the ground that the offer to lease had been withdrawn before acceptance and that there was no delivered lease and no contract obligating him to deliver the lease, including a plea of the statutes of frauds, § 4, Art. 3995, Vernon's Ann.Civ.Stats. Subject to his defense, Burnett in the alternative sought recovery for improvements and cost of operating the property.

The court tried, first, the question of "contract" or "no contract" and, second, the question of recovery of the value of improvements and cost of operation.

The trial of the first phase of the case was to a jury and at the close of the evidence both sides moved for instructed verdicts. The court overruled both motions and submitted one issue to the jury. The jury answered this issue favorably to Mar-Tex and then, after hearing other testimony, the court rendered judgment requiring Burnett to deliver the oil and gas lease drilling contract and allowed Burnett certain recoveries for improvements and cost of operation. Burnett has prosecuted this appeal.

Appellant's first contention is that there was no delivered lease and no contract to deliver a lease and, in any event, no contract which meets the requirements of the statutes of fraud (§ 4, Art. 3995, V.A.C.S.). We sustain this contention.

Burnett lived in Los Angeles, California, and owned Shamrock Island. Mar-Tex was desirous of securing an oil and gas lease upon this island. John D. Wheeler, Esq., of San Antonio, Texas, was an attorney for Burnett. J. Cleo Thompson, Esq., of Dallas, Texas, was and is President of Mar-Tex. Wheeler, Thompson and Burnett met at Burnett's office in Los Angeles, California, on February 23, 1950,

to see if Burnett was willing to lease to Mar-Tex. After much discussion, on February 24, 1950, a lease drilling agreement was drafted, signed and acknowledged by Burnett. This lease was turned over to Thompson with the following letter signed by Burnett:

"February 24, 1950.

"Mr. J. Cleo Thompson

Dear Sir:

"There is handed to you herewith three copies of Oil and Gas Lease to Shamrock Island, Nueces County, Texas, which have been duly executed by me.

"These leases are placed in your hands for the sole purpose of your securing their execution by Mar-Tex Realization Corporation, through its President and Secretary, and turning said leases over to my attorney J. D. Wheeler in San Antonio, Texas, Alamo National Bank Building.

"Your acceptance of this agency will be noted on the bottom of this letter.

"Yours very truly,

Coy Burnett

Accepted:

J. Cleo Thompson"

Burnett also signed the following letter to Wheeler:

"February 24, 1950

"Mr. J. D. Wheeler

Alamo National Bank Building

San Antonio, Texas

"Dear Sir:

"When you will have received the three copies of the Oil and Gas Lease, duly executed by Mar-Tex Realization Corporation, and there has been deposited with The Frost National Bank, as escrow agent, one hundred thousand Dollars ($100,000.00) in cash, you are authorized to make delivery to Mar-Tex Realization Corporation one executed copy of the said Lease, and at the same time you will transmit to me one executed copy and deposit one executed copy with The Frost National Bank as escrow agent.

"Yours very truly,

Coy Burnett"

Burnett also signed a letter to The Frost National Bank of San Antonio, reading as follows:

"February 24, 1950

"The Frost National Bank

San Antonio, Texas

"Gentlemen:

"There is deposited with you in escrow the sum of one hundred thousand dollars ($100,000.00) by the Mar-Tex Realization Corporation, and simultaneously an executed copy of a certain Oil and Gas Lease executed by and between Coy Burnett and the Mar-Tex Realization Corporation.

"If it is established to your satisfaction as to the period of time mentioned in said Lease that the Lessee has breached its covenants enumerated in said Lease, or any of them, you will deliver said one hundred thousand dollars ($100,000.00) to the credit of Coy Burnett, whose address is 215 West Seventh Street, Los Angeles 14, California.

"If, on the other hand, it is established to your satisfaction that the Lessee has complied with its covenants as enumerated in said lease, you will deliver said one hundred thousand dollars ($100,000.00) to the Mar-Tex Realization Corporation.

"At any time, you are authorized to make such disposition of said one hundred thousand dollars ($100,000.00) as shall be requested of you by Coy Burnett and the President of Mar-Tex Realization Corporation.

"Yours very truly,

Coy Burnett"

Wheeler and Thompson flew back to Texas on the night of February 24, 1950. On the morning of February 25, 1950, the board of directors of Mar-Tex met in Dallas and ratified the action of Thompson and authorized the execution of the lease

by the President and Secretary of Mar-Tex. On March 1, 1950, Thompson received a wire from Burnett, which had been sent on February 28, 1950, stating that he did not care to go through with the deal. The wire read as follows:

"Regret new developments convince me it unwise that I proceed with present negotiations concerning Shamrock Island and I therefore hereby suspend such negotiations and deliveries hereunder and withdraw all offers in connection therewith shall call Mr. Wheeler and you if you desire to join in conference call at nine tomorrow morning our time to attempt to explain to both of you my satisfaction (dissatisfaction) with several matters including clauses permitting you optional rights concerning title and assignment rights which could possibly be used before I had benefit of your independent development of island

"Coy Burnett"

On the morning of March 1, 1950, Burnett, Thompson and Wheeler had a three-way telephone conversation in which Burnett again informed Thompson that he did not care to go through with the lease, and Thompson stated that he would return the lease to Burnett.

On March 6, 1950, Mar-Tex deposited $100,000 in the Frost National Bank of San Antonio, and delivered the three copies of the lease to Wheeler. The money was deposited in the bank to the credit of Mar-Tex. Wheeler returned the three copies of the lease to Burnett.

There was no cash consideration or bonuses paid or to be paid in connection with the lease. No earnest money was put up by Mar-Tex. If there was any agreement to make a lease on the part of Burnett it was not in writing, nor was there any sufficient memorandum in writing showing that such an agreement had been made. The lease that was signed was on its face a present lease and not an agreement to make a lease in the future.

■ An oil and gas lease conveys an interest in real estate and must be in writing. Stephens County v. Mid-Kansas Oil

& Gas Co., 113 Tex. 160, 254 S.W. 290; Art. 1288, V.A.C.S.

■ The lease in this case is not effective as such unless unconditionally delivered. Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S.W. 823; Schmidt v. Baar, Tex.Civ.App., 283 S.W. 1115.

■ The delivering of the lease to Thompson for the sole purpose of having him take it to Dallas and have it executed by Mar-Tex and then delivered to Burnett's attorney in San Antonio, was not an unconditional delivery of the lease. Schmidt v. Baar, Tex.Civ.App., 283 S.W. 1115.

■ The lease and the three letters signed by Burnett cannot serve as a sufficient memorandum of an oral agreement to make a lease, as is provided for by the Statutes of Fraud, Art. 3995, § 4, supra, because they fail to show that Burnett made any binding agreement to deliver the lease. The lease itself is no more evidence of an agreement to deliver a lease than would any undelivered lease or deed. The letter to Thompson does not show an unconditional delivery of the lease but upon a definite condition that the lease should be returned to Burnett's attorney after it was executed by Mar-Tex. The letter to Wheeler went no further than to authorize Wheeler to deliver the lease after the $100,000 had been deposited in the Frost Bank. The letter to Frost National Bank merely tells the bank how the money is to be handled after it is deposited. The provisions of these writings are certainly as consistent with the idea that no agreement to deliver a lease was made as they are that such an agreement was made. Under such circumstances the requirements of the Statutes of Fraud are not met. Osborne v. Moore, 112 Tex. 361, 247 S.W. 498.

■■ The following issue was submitted to the jury and answered by it as indicated:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that on February 24, 1950, the defendant, Coy Burnett, agreed with the witness, Cleo Thompson, that upon the instrument which is entitled 'Oil and Gas Lease' involved

616

herein being signed by Mar-Tex Realization Corporation, and the three signed copies thereof being delivered to the attorney, John D. Wheeler, and upon the Mar-Tex Realization Corporation depositing the sum of $100,000.00 in escrow with the Frost National Bank, it would be the duty of the said John D. Wheeler to deliver one executed copy of such lease to the plaintiff herein, and one executed copy thereof to said bank, and the remaining executed copy thereof to be transmitted to the defendant, Coy Burnett?

"Answer 'Yes' or 'No.'

"Answer: Yes."

This finding by the jury adds nothing to the question here being considered. The question of whether there was a sufficient written memorandum to show an oral contract to make a lease is a question of law and not one of fact. Johnson v. Granger, 51 Tex. 42; Osborne v. Moore, supra; Robertson v. Melton, 131 Tex. 325, 115 S. W.2d 624, 118 A.L.R. 1505; Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150; Hereford v. Tilson, 145 Tex. 600, 200 S. W.2d 985; Buratti & Montandon v. Tennant, 147 Tex. 536, 218 S.W.2d 842, 9 A.L.R.2d 742. The letter to Wheeler stated plainly that Wheeler was authorized to deliver the lease. However, if the letter had said Wheeler shall deliver the lease it would still be subject to being revoked by Burnett up to the time the lease was actually delivered. The possession of Wheeler would have been the possession of Burnett and so long as Burnett had this lease in his possession or under his control he could refuse to deliver it and end the negotiations, because it took delivery to make the lease effective. Stevens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290; Art. 1288, supra; Steffian v. Milmo National Bank, 69 Tex. 513, 6 S.W. 823.

 It is plain from this entire record that the parties were here attempting to execute a lease upon Shamrock Island without first making an oral or written agreement to do so and under such circumstances either party can back out and refuse to negotiate further up until the lease is signed and delivered.

 Appellee seems to contend that a delivery of the lease to Wheeler would be a delivery in escrow. We do not agree, but a sufficient answer to this contention is that before the lease reached Wheeler, Burnett had called the deal off and refused to go through with the negotiations.

The judgment of the trial court is reversed and judgment here rendered that Mar-Tex Realization Corporation take nothing and pay all costs of this Court and the court below.